**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
**BRIDGET POLLARD,**                      )
                                          )
                **Plaintiff,**            )
                                          )
        **v.**                            )        **Case No. 1: 07-00692(CKK)**
                                          )
                                          )
**QUEST DIAGNOSTICS,**                    )
                **Defendant.**            )
_____)

**<u>DEFENDANT' S OPPOSITION TO PLAINTIFF'S MOTION</u>**
**<u>FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT</u>**

Defendant Quest Diagnostics ("Quest") by and through counsel, respectfully submits this Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint on the grounds that Plaintiff's second attempt to amend the original Complaint is a result of undue delay, is prejudicial, and would by necessity extend the Court's Scheduling Order without "good cause". As discussed in detail below, Plaintiff's Motion should be denied.

I.    **Background**

On April 16, 2007,  Plaintiff Bridget Pollard filed her original Complaint with this Court, asserting race discrimination and retaliation claims under both Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* (2008), and Section 1981, 42 U.S.C. §1981 (2008).  On August 6, 2007, the Court issued a Scheduling and Procedures Order which set the following relevant deadlines: August 31, 2007 for filing amended pleadings and January 4, 2008 for completion of discovery. See Ex. A ("8/6/07 Order").

On August 31, 2007, Plaintiff filed a Motion for leave to amend her complaint curing some non-substantive deficiencies as well as withdrawing a retaliation claim relating to the termination of her employment.  The Court granted Plaintiff's unopposed Motion.

On December 28, 2007, Plaintiff filed an unopposed Motion to Extend Deadlines. In a Minute Order, the Court denied, without prejudice, Plaintiff's Motion by noting that "motions for extensions are strongly discouraged … and will be granted only in exceptional or compelling circumstances".

On December 31, 2007, Plaintiff filed an Unopposed Second Motion to Extend Deadlines.  Although the Court granted this Motion, it ruled that "NO FURTHER EXTENSIONS" would be granted in this matter and discovery must end on February 4, 2008.  *See* Ex. B ("12/31/07 Order") (emphasis in original).

Well after the deadline for filing amended pleadings, Plaintiff has now filed a Motion for Leave to File a Second Amended Complaint proposing the following

2

amendments to her retaliation claim: (1) that Quest's alleged failure to assign her work on weekends and vacations after relocating to North Carolina for another job was retaliatory; and (2) that she was retaliated against for her alleged informal complaint of discrimination to management. If these amendments are granted, Defendant would have to ask the Court to reopen discovery on these issues. Indeed, it would be unfair and prejudicial if Defendant was not allowed to take full discovery on these new allegations. Thus, if granted, these amendments would necessarily extend discovery beyond the February 4th deadline.

In support of her untimely Motion, Plaintiff contends that she just recently discovered these alleged facts through discovery, therefore justifying her delay. As is discussed more fully below, Plaintiff's contention lacks merit. Indeed, Plaintiff's Motion is inappropriate and therefore should be denied for several compelling reasons: (1) even assuming that Plaintiff's proposed amendments are true--which they are not--by their very nature, Plaintiff would have known about them when they allegedly occurred--well before discovery; (2) if granted, Quest would be prejudiced by having to conduct additional discovery and thereby incur additional expenses; (3) the Motion is unauthorized by both the Court's August 6, 2007 and December 31, 2007 Orders; and (4) Plaintiff lacks a good faith basis for proposing these amendments.

While Quest has previously indulged Plaintiff's requests to amend the Complaint and for extending discovery, it can no longer do so. Accordingly, Quest respectfully

submits that after reviewing both Plaintiff's Motion and the record in this case, it will be abundantly clear that Plaintiff's Motion should be denied.

## II.    <u>Argument</u>

### A.    <u>The Standard of Review</u>.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to file an amended complaint "shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a).

However, the Court may deny a leave to amend on grounds of undue delay or undue prejudice to a Defendant. *See LaPrade v. Abramson*, Civ. No. 97-10 (RWR), 2006 WL 3469532, at *3 (D.D.C. Nov. 29, 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B.    <u>Plaintiff's Second Amended Complaint is Unduly Delayed and therefore should be Denied</u>.

In her First Amended Complaint, Plaintiff alleges unlawful retaliation resulting in an allegedly inferior performance evaluation. Now, Plaintiff contends that Quest also retaliated against her by failing to assign her work on weekends and vacations after she relocated to North Carolina to obtain other full-time employment.  Absent any support, Plaintiff argues that she only recently discovered these alleged new facts through some unidentified stage of discovery. At a minimum, Plaintiff should have appended, quoted, or cited an excerpt from a deposition transcript or other discovery response supporting her contention.  *See White v. Am. Axle & Mfg., Inc*., No. 05-CV-72741-DT, 2006 WL

2811264, at *7 (E.D. Mich. Sept. 28, 2006) (denying motion to amend where plaintiff failed to adduce any evidence that he recently discovered new information through recent deposition).

Quest respectfully submits that Plaintiff's argument is wholly disingenuous. Even assuming that Quest had retaliated against Plaintiff--which it did not--Plaintiff certainly would have been aware of the facts surrounding her claim when it allegedly occurred. Indeed, during her deposition, Plaintiff testified that Quest did not assign her any further assignments after June 2006. *See* Ex. C ("Pollard Dep.") at 37:17-19. In her Motion, Plaintiff did not--nor could she--offer any plausible explanation for how she could testify about these allegations and at the same time be unaware of them. Obviously, Plaintiff was fully aware of these allegations but simply failed to include them in her two previous pleadings. Now, on the eve of the close of discovery, it is simply too late. Significantly, in her original Complaint, Plaintiff alleged that the termination of her employment by Quest was unlawful retaliation. She then withdrew that claim in her First Amended Complaint. In essence, she is attempting to reassert that claim now by claiming that Quest stopped calling her into work. Indeed, as a "PRN" or on-call employee, the failure to receive any call-ins for work is tantamount to a termination.

Accordingly, as Plaintiff knew the alleged facts surrounding her proposed amendment, it should be denied as unduly delayed. *See  LaPrade*, 2006 WL 3469532, at *4 (citing *Yager v. Carey*, 910 F. Supp. 704, 731-32 (D.D.C. 1995)(finding that the Court should deny a leave to amend as dilatory or unduly delayed where a plaintiff was aware

of facts giving rise to the cause of action before filing the complaint that she now wishes

to amend); *In re Acceptance Ins. Cos., Inx., Sec. Litig.*, 352 F. Supp. 2d 928, 933-34 (D.

Neb. 2003) (denying motion to amend based on allegedly new information that plaintiff

knew, or through exercise of reasonable effort should have known at earlier time).

Confusingly, Plaintiff also proposes to amend her Complaint by alleging that she

also engaged in protected activity "after she complained of discrimination to

management".  However, as Plaintiff does not allege that she recently obtained this

information through discovery, the reason for Plaintiff's delay is unclear.  However, it is

clear that Plaintiff would have known if she allegedly complained of discrimination to

management well before now.  Thus, her failure to previously include this allegation is

inexcusable and her Motion should be denied.


**C.       Plaintiff's Motion is Unduly Prejudicial to Defendant.**

Contrary to Plaintiff's assertion, her untimely Motion is indeed prejudicial.  If

granted, Quest must conduct further discovery and incur additional expenses for

allegations which are inexplicably late.  If these alleged acts did occur--which Quest

vehemently denies--Plaintiff would have been aware of them when they occurred, more

than two years ago.  Quest certainly should not bear the cost of Plaintiff's failure to

timely present her claims.  Accordingly, Plaintiff's Motion should be denied.  *Hollinger-*

*Haye v. Harrison Western/Franki-Denys*, 130 F.R.D. 1, 2 (D.D.C. 1990) (denying motion

to amend as prejudicial where if granted, Defendant would have to conduct additional discovery for claims Plaintiff was aware of before the close of discovery).

**D.      Plaintiff's Motion is Unauthorized by Court's August 6 and December 31, 2007 Orders.**

The Court should deny Plaintiff's Motion on an additional ground--it is well beyond the August 31, 2007 deadline for filing amended pleadings. *See* 8/6/07 Order. Additionally, if granted, discovery would have to be extended, which is inconsistent with the Court's December 31, 2007 Order.  Specifically, the Court expressly ruled that there will be "NO FURTHER EXTENSIONS" granted in this matter and that discovery in this action shall be completed on or before February 4, 2008.   *See* 12/31/07 Order. Completely disregarding the Court's Orders, Plaintiff filed this untimely Motion. Because Plaintiff's Motion is unauthorized by the Court's Orders, she must establish "good cause" for granting her Motion. *See Robinson v. Detroit News*, *Inc*., 211 F. Supp. 2d 101, 114 (D.D.C. 2002) (citing *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1294 (9th Cir. 2000)).  This she cannot do.

Not only has Plaintiff unduly delayed incorporating these proposed amendments, she also lacks a good faith basis for asserting them.  Indeed, Plaintiff's own deposition testimony revealed that there is no evidentiary support for her amendments.  *See* Fed. R. Civ. P. 11 (imposing obligation to present only "factual contentions having evidentiary support").  Although Plaintiff now contends that Quest retaliated against her by failing to assign her work after her relocation, this is contrary to her deposition testimony. She

7

specifically explained that after filing her EEOC charge and relocating to North Carolina, Quest "would call her if they had some open ends or they needed extra help". *See* Pollard Dep. at. 42:13-16.   Moreover, Plaintiff testified that she worked at least ten hours in both April and June of 2006.  *See* Pollard Dep. at 40:18-22; 41:13-17.  When asked if she knew why Quest did not assign her any further assignments after June 2006, she explicitly stated "No".  *See* Pollard Dep.  at 45:15-18.

Similarly, Plaintiff testified that she never complained to management about her rejection for the IT position.  *See* Pollard Dep. 99:21-22; 100:1-6 (Q. Did you have any communications with anyone at Quest concerning the fact that you weren't selected for the position after HR told you that you weren't selected? A: I believe that there was some general discussion among co-workers that some of them felt like I was very qualified and should have gotten the position). And, while she testified that she discussed her allegedly inferior performance evaluation with her former supervisor, Ms. Isabelita Aglipay, she did not testify that she ever complained that her evaluation was discriminatory. *See* Pollard Dep. 145:15-18; 148:17-19.

Clearly, Plaintiff's inexplicable delays and unsubstantiated allegations do not constitute "good cause" for granting her Motion.  The Court has previously allowed Plaintiff to both amend her Complaint and extend discovery.  Plaintiff is entitled to no further concessions.  The Court, therefore, should deny Plaintiff's Motion and allow this litigation to proceed in accordance with the Scheduling Order.

### III.    <u>Conclusion</u>

As stated above, Plaintiff's Motion should be denied as unduly delayed, prejudicial to the Defendant and unauthorized under the Court's Orders. Accordingly, the Court should deny Plaintiff's Motion, and award Defendant its reasonable attorneys' fees and costs and such further relief as the Court may deem proper.

Respectfully submitted,


<u>            /s/ Michael L. Stevens        </u>
Michael L. Stevens D.C.  Bar No. 384887
Arent Fox LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339
(202) 857-6000
Dated:  February 4, 2008          Counsel for Defendant

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 4th day of February, 2008, a copy of the foregoing

Defendant's Opposition to Plaintiffs' Motion for Leave to File a Second Amended

Complaint was filed electronically.  Notice of this filing will be sent to all parties by

operation of the Court's electronic filing system and copies will be mailed via U.S. mail,

postage prepaid to all parties who are not served via the Court's electronic filing system.


_____/s/_____
Michael L. Stevens

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BRIDGET POLLARD**                    :
                                       :
     Plaintiff,                     :
                                       :
     v.                             :    Civil Action No.    **07cv0692**
                                       :
**QUEST DIAGNOSTICS**                  :
                                       :
     Defendant.                     :

## SCHEDULING AND PROCEDURES ORDER[1]

## (JUDGE KOLLAR-KOTELLY)

In order to administer the above-captioned civil case in a manner fair to the litigants and consistent with the parties' interest in completing this litigation in the shortest possible time and at the least possible cost,

it is this _6_ day of August, 2007,

**ORDERED** that counsel for the plaintiff and the defendant are directed to comply with each of the following directives: [2]

(1)    **COMMUNICATIONS WITH THE COURT**:

Counsel should endeavor to keep communications with chambers to a minimum.
Counsel are advised that chambers staff **cannot** provide legal advice of any kind.

---

[1]      Revised on October 26, 2006.

[2]      The court will hold counsel responsible for following the directives set forth in this order. Failure to conform to this order's directives may result, when appropriate, in the imposition of sanctions.

*Ex parte* communications on matters other than scheduling matters are prohibited. If counsel need to contact chambers, it should be done jointly pursuant to a telephone conference call arranged by the parties.

(2)    **MOTIONS FOR EXTENSIONS OF TIME**:[3]

Motions for extensions of time are strongly discouraged. Parties should not expect the court to grant extensions, as they will be granted only in truly exceptional or compelling circumstances. The parties are referred to *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, et. al.*, 101 F.3d 145 (D.C. Cir. 1996). Motions for extension of time shall be filed at least **four** business days prior to the deadline the motion is seeking to extend. All motions for extensions **must** include the following (otherwise they will not be considered by the court):

(a)    how many, if any, previous extensions of time the court has granted to each party;

(b)    the specific grounds for the motion;

(c)    a statement of the effect that the court's granting of the motion will have on all other previously set deadlines;

(d)    in cases where the motion seeks to extend the deadline for a dispositive motion, a suggested deadline for the filing of the opposition and reply;[4] and, lastly,

(e)    pursuant to Local Rule LCvR 7(m) (formerly LCvR 7.1(m)), the moving party shall include a statement of opposing counsel's position vis-a-vis the motion.

---

[3]    The court will not entertain stipulations concerning extensions of time. Parties must file a motion when seeking an extension.

[4]    The deadline for the opposition should be suggested after consulting with opposing counsel.

Case 1:07-cv-00692-CKK    Document 7    Filed 08/06/2007    Page 3 of 7

(3)     **PLEADINGS:**

      (a)    Every pleading shall indicate, immediately below the Civil Action No. in the caption, the next-scheduled Court deadline, such as a status conference, or pre-trial conference, or trial date.

      (b)    Every pleading signed by an attorney or *pro se* party shall, in conformity with Local Rule LCvR 5.1(e), contain the name, address, telephone number, and for an attorney the bar identification number.

      (c)    Counsel shall provide Chambers (NOT the Clerk's Office), with a printed courtesy copy of any electronic submission that is over twenty-five (25) pages in total length, or that includes more than one exhibit and/or any exhibits more than ten (10) pages in length. Any exhibits shall be appropriately tabbed for ease of reference.

(4)     **DISCOVERY DISPUTES:**

    Counsel are referred to Local Rule LCvR 26.2 and expected to fully conform with its directives. Moreover, counsel are required, under both Federal Rule of Civil Procedure 26(f) and Local Rule LCvR 7.1(m), to confer in good faith in an effort to resolve any discovery dispute before bringing it to the court's attention. If, in what should be the unusual case, counsel are unable to resolve their dispute, counsel shall contact chambers in order to arrange for a telephone conference with the court. **Counsel shall not file a discovery motion without prior consultation with opposing counsel.** Counsel are advised that if the court is called upon to resolve such a motion, the losing **attorney** (not the principal) will be sanctioned pursuant to Fed. R. Civ. P. 37(a)(4).

(5)     **DEPOSITION GUIDELINES:**

    Counsel will adhere to the following guidelines when taking a deposition:

(a)  Counsel for the deponent shall refrain from gratuitous comments and from directing the deponent as to times, dates, documents, testimony, and the like;

(b)  Counsel shall refrain from cuing the deponent by objecting in any manner other than stating an objection for the record followed by a word or two describing the legal basis for the objection;

(c)  Counsel shall refrain from directing the deponent not to answer any question except for reasons which conform to Fed. R. Civ. P. 30(d)(1);

(d)  Counsel shall refrain from engaging in dialogue on the record during the course of the deposition;

(e)  If counsel for any party or person given notice of the deposition believes that these conditions are not being adhered to, that counsel may call for suspension of the deposition and then immediately apply to the court for a ruling and remedy.  When appropriate, the court will impose sanctions;

(f)  All counsel are to conduct themselves in a civil, polite, and professional manner.  The court will not countenance incivility or other behavior during the deposition demonstrating that the examination is being conducted in bad faith or to simply annoy, embarrass, or oppress the deponent; and

(g)  In accordance with an amendment to Federal Rule of Civil Procedure 30(d)(2), effective December 1, 2000, no deposition may last more than seven hours (exclusive of breaks), except by leave of the court <u>or</u> stipulation of the parties.

(6)  **<u>SUMMARY JUDGMENT</u>:**

The parties shall comply **fully** with Local Rule LCvR 7(h) (formerly 7.1(h)) and 56.1.  The Court strictly adheres to the dictates of Local Civil Rules 7(h) and 56.1 and may strike pleadings not in conformity with these rules.  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002).

4

A party responding to a statement of material facts must respond to each paragraph with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied. The responding party should include any information relevant to its response in that paragraph. If the responding party has additional facts that are not addressed in the corresponding paragraphs, the responding party should include these at the end of its responsive statement of facts. At all points, parties must furnish precise citations to the portions of the record on which they rely.

Additionally, each submission must be accompanied by a table of cases and other authority cited therein. The parties are strongly encouraged to carefully review *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, et. al.*, 101 F.3d 145 (D.C. Cir. 1996), on the subject of Local Rule LCvR 7, formerly Rule 108(h) (which is the same as rule 56.1). The Court assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion. LCvR 7(h), 56.1.

(7)    **SETTLEMENT:**

Counsel are expected to evaluate their respective cases for the purpose of settlement. The court encourages the use of alternative dispute resolution, e.g., mediation or neutral case evaluation. The use of these methods is available at any time, as is a settlement conference before a magistrate judge. If counsel are interested in pursuing these options, they may contact chambers at any time. If the case settles in whole or in part, plaintiff's counsel shall promptly advise the court.

(8)    **MOTIONS FOR RECONSIDERATION:**

"Motions for Reconsideration" of a prior court ruling are strongly discouraged. Such motions shall be filed only when the requirements of Fed. R. Civ. P. 59(c) and/or 60(b) are met. If one is filed, it shall not exceed **ten** pages in length. Moreover, the court will not entertain: (a) motions which simply reassert arguments previously raised and rejected by the court; and (b) arguments which should have been previously raised, but are being

5

raised for the first time in the "Motion for Reconsideration." *See, e.g., National Trust v. Department of State*, 834 F. Supp. 453, 455 (D.D.C. 1995).

(9)    **STATUS CONFERENCE:**

Counsel must be prepared at the status conference to advise the Court of the expected length of trial and of the number of fact and expert witnesses that each party will present. Trial counsel themselves must appear at all hearings, unless excused by the Court in advance of the hearing date.

It is **FURTHER ORDERED** that:

1.    **Motions to Amend pleadings and/or to join additional parties** shall be due on or before ___8/31/07___;

with Oppositions due on or before ___10 days later___;

and Replies, if any, due on or before ___5 days later___.

2.    Proponent's Rule 26(a)(2)(B) statement shall be due on or before ___Nov. 16, 2007___

3.    Opponent's Rule 26(a)(2)(B) statement shall be due on or before ___Dec 7, 2007___

4.    **Within 10 days of this Order**, the parties are to complete a **discovery plan**, including, but not limited to, precise dates for depositions and the exchange of written discovery. It shall be docketed as "**Status Report as to Discovery Plan.**"

5.    **All discovery will be completed on** or before ___Jan. 4, 2008___.

6.    Each party is limited to a maximum of 10 depositions and 25 interrogatories.

7.    This case shall be referred to Magistrate Judge ___Kay___ for mediation to commence ___Nov. 1, 2007___ and conclude by ___Jan. 25, 2008___. Counsel, parties, and persons with settlement authority are directed to attend the mediation sessions. If referred for Court ordered ADR, the Clerk of the Court is directed to furnish a copy of this Order to the Circuit Executive for the purpose of assigning a mediator.

6

8.   **Dispositive motions** are due on or before _____ *sed at status* _____;

with oppositions due on or before _____;

and Replies, if any, due on or before _____.

9.   **A Status Hearing is hereby set for** _Jan. 25, 2008_ at _9'00 AM_.

10.  **A Final Status Conference/Motions Hearing/Settlement Conference** is hereby set for _____ *N/A* _____ at _____.

**Dates for the pretrial conference, motions *in limine*, *voir dire* and trial will be set at the final status hearing, if necessary.  The Above Scheduled Dates Are Firm.**

**SO ORDERED.**

_8/6/07_
／Date

_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

# **<u>EXHIBIT B</u>**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIDGET POLLARD,

    Plaintiff,

    v.

QUEST DIAGNOSTICS, INC.,

    Defendant.

Civil Action No. 07-692 (CKK)

**ORDER**
(December 31, 2007)

On December 28, 2007, Plaintiff filed an Unopposed Motion to Enlarge Deadlines, which

the Court denied without prejudice the same day because it did not indicate why discovery would

not be completed within the current deadline of January 4, 2008, or how the parties proposed to

complete discovery within the period of extension they sought.  Plaintiff has now filed a Second

Unopposed Motion to Enlarge Deadlines, in which she sets forth the depositions that she would

take within the period of extension, and requests an extension of the referral of this case to

Magistrate Judge Alan Kay for mediation.  The Court notes that, while Plaintiff's motion is

unopposed, Plaintiff does not appear to have coordinated with defense counsel regarding the

dates on which she plans to schedule her additional depositions.

Accordingly, it is, this 31st day of December, 2007, hereby

**ORDERED** [16] Plaintiff's Second Unopposed Motion to Enlarge Deadlines is

GRANTED.  However, there will be NO FURTHER EXTENSIONS granted in this matter.

Accordingly, Plaintiff's counsel is expected to coordinate with defense counsel forthwith

regarding the availability of deponents, and to schedule the remaining depositions so that

discovery is completed within the extension period; it is further

    **ORDERED** that discovery in this action shall be completed on or before February 4,

2008; it is further

    **ORDERED** that the referral of this case to Magistrate Judge Alan Kay for mediation is

hereby extended indefinitely; it is further

    **ORDERED** that the Status Conference in this case previously scheduled for January 25,

2008 at 9:00 a.m. is VACATED.  A Status Conference shall be held in this matter on Friday,

March 7, 2008 at 9:30 a.m.  The parties' proposed Status Conference date of February 29, 2008

conflicts with the Court's trial schedule.

    **SO ORDERED**.


                                        _/s/_
                                     COLLEEN KOLLAR-KOTELLY
                                     United States District Judge

# EXHIBIT C

VIDEOTAPED DEPOSITION OF BRIDGET L. POLLARD
CONDUCTED ON FRIDAY, DECEMBER 21, 2007

37

| | | |
|---|---|---|
| 1 | A.    I was employed by Wake Tech. | 09:30:37 |
| 2 | Q.    And you were residing in Raleigh, North | 09:30:39 |
| 3 | Carolina; isn't that correct? | 09:30:42 |
| 4 | A.    Yes. | 09:30:44 |
| 5 | Q.    Okay.  When did you move to Raleigh, | 09:30:44 |
| 6 | North Carolina? | 09:30:47 |
| 7 | A.    I moved to Raleigh, North Carolina, | 09:30:49 |
| 8 | actually in March. | 09:30:52 |
| 9 | Q.    Of 2006? | 09:30:53 |
| 10 | A.    Yes. | 09:30:54 |
| 11 | Q.    And did you perform any work for Quest | 09:30:55 |
| 12 | after you moved to Raleigh, North Carolina? | 09:30:57 |
| 13 | A.    Yes, I did. | 09:31:00 |
| 14 | Q.    When did you perform work for Quest? | 09:31:01 |
| 15 | A.    I'm not sure of the dates, but I | 09:31:03 |
| 16 | believe it to be in March, April, June of 2006. | 09:31:07 |
| 17 | Q.    Did you perform any work for Quest | 09:31:19 |
| 18 | after June of 2006? | 09:31:21 |
| 19 | A.    No. | 09:31:24 |
| 20 | Q.    How many hours did you work for Quest | 09:31:27 |
| 21 | in March of 2006? | 09:31:29 |
| 22 | A.    I'm not sure. | 09:31:31 |

VIDEOTAPED DEPOSITION OF BRIDGET L. POLLARD
CONDUCTED ON FRIDAY, DECEMBER 21, 2007

40

| 1 | A. Yes. | 09:33:11 |
|---|---------|----------|
| 2 | Q. Did you have a job offer before you | 09:33:12 |
| 3 | moved to Raleigh? | 09:33:14 |
| 4 | A. No. | 09:33:16 |
| 5 | Q. So you moved down there without a job? | 09:33:16 |
| 6 | A. Yes. | 09:33:19 |
| 7 | Q. Had you ever lived in North Carolina | 09:33:20 |
| 8 | before that? | 09:33:21 |
| 9 | A. Yes. | 09:33:22 |
| 10 | Q. That was when you went to UNC | 09:33:25 |
| 11 | Wilmington? | 09:33:28 |
| 12 | A. Yes. | 09:33:29 |
| 13 | Q. How was it that you worked on some | 09:33:32 |
| 14 | occasions at Providence Hospital for Quest after | 09:33:38 |
| 15 | you moved to Raleigh, North Carolina? | 09:33:42 |
| 16 | A. I agreed to work the hours, and I came | 09:33:46 |
| 17 | back to D.C. to work. | 09:33:48 |
| 18 | Q. Okay. Do you know how many hours you | 09:33:51 |
| 19 | worked for Quest in April? | 09:33:54 |
| 20 | A. I don't know. | 09:33:57 |
| 21 | Q. Was it more than ten? | 09:33:58 |
| 22 | A. Yes. | 09:33:59 |

VIDEOTAPED DEPOSITION OF BRIDGET L. POLLARD
CONDUCTED ON FRIDAY, DECEMBER 21, 2007

41

| | | | |
|---|---|---|---|
| 1 | Q. | Okay. Was it more than 20? | 09:34:00 |
| 2 | A. | I don't know. | 09:34:03 |
| 3 | Q. | You don't know? | 09:34:04 |
| 4 | A. | No. | 09:34:04 |
| 5 | Q. | Would you be surprised if it was more | 09:34:05 |
| 6 | than 20? | | 09:34:07 |
| 7 | A. | No. | 09:34:08 |
| 8 | Q. | So you think it was more than 20? | 09:34:10 |
| 9 | A. | I'm not sure. | 09:34:12 |
| 10 | Q. | Okay. You certainly weren't working on | 09:34:14 |
| 11 | a full-time basis; is that correct? | | 09:34:17 |
| 12 | A. | That's correct. | 09:34:20 |
| 13 | Q. | How many hours did you work for Quest | 09:34:20 |
| 14 | in June? | | 09:34:23 |
| 15 | A. | I'm not sure. | 09:34:24 |
| 16 | Q. | Was it more than ten? | 09:34:25 |
| 17 | A. | I believe it was more than ten. | 09:34:28 |
| 18 | Q. | Was it more than 20? | 09:34:30 |
| 19 | A. | It may have been. | 09:34:32 |
| 20 | Q. | Why didn't you work any more hours | 09:34:35 |
| 21 | after June? | | 09:34:38 |
| 22 | A. | Because I wasn't called for work. | 09:34:39 |

VIDEOTAPED DEPOSITION OF BRIDGET L. POLLARD
CONDUCTED ON FRIDAY, DECEMBER 21, 2007

42

| | | |
|---|---|---|
| 1 | Q.    Did you ever call Quest to ask for | 09:34:42 |
| 2 | work? | 09:34:45 |
| 3 | A.    No. | 09:34:46 |
| 4 | Q.    Did you tell Ms. Leghesse that you were | 09:34:46 |
| 5 | working a full-time job in North Carolina? | 09:34:53 |
| 6 | A.    No. | 09:34:56 |
| 7 | Q.    So it's your testimony that you didn't | 09:34:58 |
| 8 | tell her that you were working a full-time job in | 09:35:00 |
| 9 | North Carolina? | 09:35:04 |
| 10 | A.    No. | 09:35:04 |
| 11 | Q.    Is there a reason why you didn't tell | 09:35:05 |
| 12 | her that? | 09:35:07 |
| 13 | A.    Because usually when I worked for Quest | 09:35:08 |
| 14 | I worked on the weekends, and they would call me | 09:35:10 |
| 15 | if they had some open ends or they needed some | 09:35:13 |
| 16 | extra help.  I covered basically weekends and | 09:35:16 |
| 17 | vacations. | 09:35:20 |
| 18 | Q.    Was there ever any time when Quest | 09:35:23 |
| 19 | asked you to work some hours and you declined the | 09:35:26 |
| 20 | hours? | 09:35:30 |
| 21 | A.    Yes. | 09:35:30 |
| 22 | Q.    Okay.  And when did that occur? | 09:35:31 |

VIDEOTAPED DEPOSITION OF BRIDGET L. POLLARD
CONDUCTED ON FRIDAY, DECEMBER 21, 2007

45

| | | |
|---|---|---|
| 1 | A.    I'm not sure. | 09:37:31 |
| 2 | Q.    Did you call Hewitt Leghesse or Solomon | 09:37:33 |
| 3 | Tsehay for work with Quest at Providence Hospital | 09:37:39 |
| 4 | any time after June 2006? | 09:37:42 |
| 5 | A.    No, I did not. | 09:37:44 |
| 6 | Q.    Why not? | 09:37:46 |
| 7 | A.    No particular reason. | 09:37:46 |
| 8 | Q.    Was it because you had obtained other | 09:37:48 |
| 9 | full-time employment in North Carolina? | 09:37:51 |
| 10 | A.    No. | 09:37:53 |
| 11 | Q.    Did you ever make any inquiries to | 09:37:57 |
| 12 | Quest as to why you weren't getting any | 09:38:00 |
| 13 | assignments? | 09:38:02 |
| 14 | A.    No. | 09:38:04 |
| 15 | Q.    Do you have any reason to know why | 09:38:07 |
| 16 | Quest didn't call you for any other assignments | 09:38:10 |
| 17 | after June 2006? | 09:38:12 |
| 18 | A.    No. | 09:38:14 |
| 19 | Q.    When you received the letter that's | 09:38:21 |
| 20 | before you as Deposition Exhibit 7 dated | 09:38:23 |
| 21 | October 4, 2006, did you contact anyone at Quest | 09:38:27 |
| 22 | to say that you wanted to continue to work there? | 09:38:30 |

VIDEOTAPED DEPOSITION OF BRIDGET L. POLLARD
CONDUCTED ON FRIDAY, DECEMBER 21, 2007

99

| | | |
|---|---|---|
| 1 | her? | 10:48:56 |
| 2 |     A.    No. | 10:48:56 |
| 3 |     Q.    Do you know anything about her | 10:48:57 |
| 4 | qualification for the position? | 10:48:58 |
| 5 |     A.    No. | 10:48:59 |
| 6 |     Q.    Had you ever met -- Have you ever met | 10:49:01 |
| 7 | Sean Townsend? | 10:49:05 |
| 8 |     A.    No. | 10:49:07 |
| 9 |     Q.    Have you ever met Jane Kopley? | 10:49:08 |
| 10 |     A.    No. | 10:49:10 |
| 11 |     Q.    Did you have any -- After you learned | 10:49:14 |
| 12 | from Human Resources that you weren't selected for | 10:49:17 |
| 13 | the position, did you have any conversations with | 10:49:21 |
| 14 | Mr. Vandenburg about that position? | 10:49:23 |
| 15 |     A.    No. | 10:49:26 |
| 16 |     Q.    Did you attempt to contact him to | 10:49:29 |
| 17 | discuss it? | 10:49:32 |
| 18 |     A.    No. | 10:49:32 |
| 19 |     Q.    Did he attempt to contact you? | 10:49:33 |
| 20 |     A.    Not that I know of. | 10:49:35 |
| 21 |     Q.    Did you have any communications with | 10:49:48 |
| 22 | anyone at Quest concerning the fact that you | 10:49:50 |

VIDEOTAPED DEPOSITION OF BRIDGET L. POLLARD
CONDUCTED ON FRIDAY, DECEMBER 21, 2007

100

| | | |
|---|---|---|
| 1 | weren't selected for the position after HR told | 10:49:54 |
| 2 | you that you weren't selected? | 10:50:00 |
| 3 | A.    I believe that there was some general | 10:50:05 |
| 4 | discussion among co-workers that some of them felt | 10:50:13 |
| 5 | like I was very qualified and should have gotten | 10:50:22 |
| 6 | the position. | 10:50:29 |
| 7 | Q.    When you say you believe that, why do | 10:50:31 |
| 8 | you believe that? | 10:50:34 |
| 9 | A.    Hearsay. | 10:50:35 |
| 10 | Q.    Okay.  And who did you hear that from? | 10:50:36 |
| 11 | A.    I don't know. | 10:50:38 |
| 12 | Q.    And who were the co-workers that you | 10:50:39 |
| 13 | believe had general discussions about you being | 10:50:43 |
| 14 | qualified for the position? | 10:50:47 |
| 15 | A.    I don't know exactly who they were. | 10:50:48 |
| 16 | Q.    You don't know who they were? | 10:50:50 |
| 17 | A.    (Shaking head.) | 10:50:52 |
| 18 | Q.    All you know is that you believe some | 10:50:55 |
| 19 | of them talked about that? | 10:50:57 |
| 20 | A.    Yes. | 10:51:00 |
| 21 | Q.    And why do you believe some of them | 10:51:00 |
| 22 | talked about that? | 10:51:02 |

VIDEOTAPED DEPOSITION OF BRIDGET L. POLLARD
CONDUCTED ON FRIDAY, DECEMBER 21, 2007

145

| | | |
|---|---|---|
| 1 | annual performance review. | 11:49:51 |
| 2 | Did Isabelita Aglipay have any role in | 11:49:57 |
| 3 | the preparation of this evaluation? | 11:49:59 |
| 4 | A.    I don't believe so. | 11:50:02 |
| 5 | Q.    And then let's look at Exhibit 15, | 11:50:04 |
| 6 | which is your '04 annual performance review.  Did | 11:50:07 |
| 7 | Isabelita Aglipay have any role in the preparation | 11:50:11 |
| 8 | of this evaluation? | 11:50:15 |
| 9 | A.    I thought she did. | 11:50:16 |
| 10 | Q.    Okay.  She didn't sign it, did she? | 11:50:17 |
| 11 | A.    No, she didn't. | 11:50:21 |
| 12 | Q.    Do you recall having any discussion | 11:50:22 |
| 13 | with her about this evaluation? | 11:50:23 |
| 14 | A.    I thought I did. | 11:50:26 |
| 15 | Q.    Do you recall any discussion you had | 11:50:31 |
| 16 | with her? | 11:50:33 |
| 17 | A.    I believe I expressed to her that I was | 11:50:34 |
| 18 | not happy with the original review. | 11:50:36 |
| 19 | Q.    Okay.  Do you recall when that | 11:50:44 |
| 20 | conversation occurred? | 11:50:46 |
| 21 | A.    No, I don't. | 11:50:48 |
| 22 | Q.    Can you tell me what you said and what | 11:50:50 |

VIDEOTAPED DEPOSITION OF BRIDGET L. POLLARD
CONDUCTED ON FRIDAY, DECEMBER 21, 2007

148

| | | |
|---|---|---|
| 1 | A.     On January 12, '06. | 11:53:29 |
| 2 | Q.     And when does it indicate that | 11:53:32 |
| 3 | Mr. Vandenburg signed it? | 11:53:34 |
| 4 | A.     On January 13, '06. | 11:53:35 |
| 5 | Q.     Did you sign this at the same time that | 11:53:38 |
| 6 | you discussed the review with Ms. Aglipay? | 11:53:43 |
| 7 | A.     Yes. | 11:53:46 |
| 8 | Q.     Did you -- So is it your recollection | 11:53:50 |
| 9 | that you signed this on January 13, '06? | 11:53:54 |
| 10 | A.     Yes. | 11:53:57 |
| 11 | Q.     And is it your recollection Ms. Aglipay | 11:53:57 |
| 12 | signed it at the same time, or do you think she | 11:53:59 |
| 13 | signed it the day before and then gave it to you | 11:54:03 |
| 14 | on the 13th? | 11:54:06 |
| 15 | A.     I thought she signed it the same day | 11:54:08 |
| 16 | that I signed it. | 11:54:10 |
| 17 | Q.     So am I correct that you and | 11:54:12 |
| 18 | Ms. Aglipay sat down and discussed this review? | 11:54:14 |
| 19 | A.     Yes. | 11:54:16 |
| 20 | Q.     Was Mr. Vandenburg in that | 11:54:17 |
| 21 | conversation? | 11:54:19 |
| 22 | A.     No. | 11:54:20 |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                      )
**BRIDGET POLLARD,**                  )
                                      )
              **Plaintiff,**          )
                                      )
        **v.**                        )        **Case No. 1: 07-00692(CKK)**
                                      )
                                      )
**QUEST DIAGNOSTICS,**                )
                    **Defendant.**    )
_____)

## <u>ORDER</u>

**UPON CONSIDERATION** of Plaintiff's Motion for Leave to File Second

Amended Complaint and the opposition thereto and the arguments of the parties, it is this

day of _____, 2008, hereby

**ORDERED,** that the Motion is denied.


                              _____
                              Honorable Colleen Kollar-Kotelly
                              United States District Judge

1